1

2

3

4

5

6                    IN  THE  UNITED  STATES  DISTRICT  COURT  FOR  THE

7                         EASTERN  DISTRICT  OF  CALIFORNIA

8

9   THE FORTY-NINER LEASE,            )      No. CV-F-07-406 OWW/WMW
    RICHARD E. WILMHURST, AND         )
10  ALAN H. CORELL,                   )      MEMORANDUM DECISION GRANTING
                                      )      DEFENDANTS STATE OF
11                                    )      CALIFORNIA, JOY PINNE AND
                                      )      MIKE HUTCHISON'S MOTION TO
12                   Plaintiffs,      )      DISMISS FIRST AMENDED
                                      )      COMPLAINT (Doc. 16) AND
13           vs.                      )      DIRECTING DEFENDANTS TO
                                      )      SUBMIT FORM OF JUDGMENT
14                                    )
    THE DEPARTMENT OF                 )
15  TRANSPORTATION, an agency of      )
    THE STATE OF CALIFORNIA, THE      )
16  UNITED STATES DEPARTMENT OF       )
    TRANSPORTATION, JOY PINE, AND )
17  MIKE HUTCHINSON,                  )
                                      )
18                                    )
                     Defendants.      )
19                                    )
    _____)
20

21        The 49er Lease and Alan Corell, represented by Jeffrey D.

22  Heiser, and Richard E. Wilmhurst, proceeding *in pro per*, have

23  filed a First Amended Complaint (FAC).  They have sued the

24  Department of Transportation of the State of California

25  (Caltrans), the United States Department of Transportation (DOT),

26

                                     1

Joy Pine [sic] and Mike Hutchinson [sic].[1]  The FAC alleges in pertinent part:

> 1.  A bypass of the downtown area of the CITY OF ANGELS was first in the planning stage in the early 1940's.  At that time the business community did not want to lose the business traffic that was going to Big Trees State Park and Nevada following Highway #4.
>
> 2.  Cal-Trans agreed to put in a new bridge in downtown Angels.  This modification in the Highway plan left the bypass planning in limbo until approximately 1989 when Highway #4 was moved to its present location.  At that time Highway #4 coming from Stockton was designed to meet Highway #49 where Highway #4 presently meets Highway #49.
>
> 3.  When moving Highway #4 North was first considered in the 1940's the new Highway was planned to bypass Angels Camp.  Since that planning took place, over sixty (60) years ago, the small town of Altaville voted to become a part of the City of Angels by annexation.  Since that time a good part of the new business area has moved north and the new Highway no longer bypasses the City of Angels.  Cal-Trans has designed the new roadway to divide the new commercial area.
>
> 4.  Over the years, Cal-Trans has had public hearings to show the community three plans of crossing the City of Angels to meet Highway #4 coming west from Vallecito.
>
> 5.  In 2000 Cal-Trans developed the Angels Camp Bypass Community Impact Assessments.  In the publication Cal-Trans promised to provide all property owners who would have landlocked parcels with new access.  Plaintiffs contacted Cal-Trans in May of 2006 when it learned of Cal-Trans positive decision not to honor its new access promise.  A true copy of a May, 2006 letter to Cal-Trans and a true copy of said publication regarding Cal-Trans'

---

[1]According to Defendants, the individual defendants' true names are Joy Pinne and Mike Hutchison.

promise to property owners is attached hereto
as Exhibit 1.

6.  In the last few years of the new Highway
#4 project, Cal-Trans failed to hold public
hearings as it changed and modified highway
location and access.  In later years Cal-
Trans substituted open house meetings at the
Angels Camp Firehouse.  Maps and
presentations were made by Cal-Trans,
however, no public hearings were held.

7.  Joy Pine [sic], District 10 Project
Manager, and Mike Hutchinson [sic], Engineer,
worked together after early public hearings
to change the new Highway #4 access to suit
their personal changes to the highway design.
The changes were made to access new Highway
#4 and existing Highway #49 were done [sic]
to make project changes as if the changes
were made by Cal-Trans when the were actually
made by two people independently playing a
road design game.

8.  Cal-Trans' current plans propose that new
Highway #4 will go through the center of
Plaintiffs' nearly fourteen (14) acres that
adjoin Highway #40 at its present signaled
crossing.  Plaintiffs do not object to Cal-
Trans purchasing the right-of-way through
Plaintiffs' property.  The new Highway #4
problem, created by Cal-Trans, results from
not providing business access to the five
acre parcel to the north, nor the seven and
one-half acre parcel to the south.

9.  Plaintiffs bring this lawsuit because
Cal-Trans' decision in not allowing access to
the southern seven and one-half acres would
prevent Plaintiffs from building a three
franchise car dealership on that parcel.  The
failure of not having the new vehicle
dealerships on the seven and one-half acre
parcel would greatly reduce the sales tax
revenues for the City of Angels.  Plaintiffs
estimate that over the years the City of
Angels would lose millions of sales tax
revenues.  The City and County would also
lose a large amount of ad valorem tax on the
new vehicle dealership building and land
value.  Cal-Trans' current proposed actions

3

1

2
                conflict with the promises they made to the
                City of Angels.

                10.   Cal-Trans and DOT have a contract
3                   wherein DOT provides Cal-Trans funds to
                assist in the building of Highway #4.

4

5
Attached to the FAC as Exhibit 1 is a partial copy of a document

6
apparently issued by Caltrans District 10 in June 2000 entitled

7
"Angels Camp Bypass Community Impact Assessments", which states

in pertinent part:
8

9
                2.6 ACCESS AND PARKING

10                ...

11                Access issues in response to the Angels Camp
                expressway appear at several locations,
12                particularly at the Sierra Trading Post gas
                station at the intersection of Route 4 and 49
13                and at several landlocked parcels.  Access
                will be abrogated on the Route 49 side to the
14                gas station owner on the corner of Route 49
                and Dogtown Road.  Customers will still have
15                access from Dogtown Road ....  The property
                would be appraised and appropriate damages
16                paid.  <u>Where landlocked parcels would result
                from the proposed project, new access will be
17                provided</u>.

18
Also attached as Exhibit 1 to the FAC is a copy of a letter dated

19
May 26, 2006 from Richard Wilmhurst to Deborah Gerbers, Senior

20
Right of Way Agent, Division of Right of Way, California

21
Department of Transportation.  In this letter, Mr. Wilmhurst

22
acknowledges receipt of the 2000 Angels Camp Bypass Community

23
Impact Assessments and refers to the emphasized sentence in

24
Paragraph 2.6, stating:

25                It appears Cal-Trans followed the direction
                of the FHWA in proving the foregoing
                representation found in the CIA and the
26                representation made to Angels Camp residents

affected by the Bypass project.

We have not found that Cal-Trans is following the representation set forth above.  Because of that representation, shouldn't Cal-Trans be bound to provide Forty-Niner, Alan H. Corell and myself with new access to the portion of our parcel that Cal-Trans presently wishes to leave landlocked?

Since Cal-Trans is pushing to have this matter heard before the Transportation Committee in early June, Cal-Trans must respond to this issue immediately.

The First Claim for Relief alleges that "Cal-Trans violated the Federal Civil Rights of Plaintiffs by not holding public hearings when changes were made in the location and access in the new Highway #4 project" and prays "that the Court enjoin the Highway #4 project and require Cal-Trans to hold public hearings allowing the community to review and hold public discussions on the changes in the project for which public hearings were not held."

The Second Claim for Relief alleges that "Cal-Trans violated its promise to Plaintiffs that new access would be provided to all property owners whose property was landlocked" and prays "that the Court order Cal-Trans to provide access from the new Highway #4 to the five and seven and one-half acre parcels designed to accommodate the new vehicle dealerships to be built on the properties."

The Third Claim for Relief alleges that "Cal-Trans is violating the Fifth Amendment rights of Plaintiffs in not allowing the commercial development of the seven and one-half

acre parcel that will provide City of Angels significant tax revenues and that "[a]lthough development of Plaintiffs' property is private it meets the public use requirements of the Fifth Amendment."

The Fourth Claim for Relief alleges that Defendants Pinne and Hutchison "violated Plaintiffs' Federal Civil Rights by changing the Highway #4 and #40 access without hearings to design a State Highway based upon personal whims" and prays for "damages according to proof."

Finally, the FAC requests that the Court

> order Cal-Trans to dismiss its lawsuits, THE PEOPLE OF THE STATE OF CALIFORNIA vs. RICHARD WILMHURST AND ALAN CORELL et al., Calaveras County Superior Court No. CV32956 and THE PEOPLE OF THE STATE OF CALIFORNIA v. THE 49ER LEASE et al., Calaveras County Superior Court No. CV 32890.  These suits in eminent domain violate Plaintiffs' Fifth Amendment right to use the property, nor a part of the new Highway #4 proposed right-of-way, in the highest and best use that will support the viability of the City of Angels.

Defendants Cal-Trans, Pinne and Hutchison move to dismiss the FAC for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

A.   Lack of Subject Matter Jurisdiction.

Caltrans moves to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, on the ground that a suit in which a state or one of its agencies is named as defendant is barred by the Eleventh Amendment to the United States Constitution.

1    The Eleventh Amendment provides:

2         The Judicial power of the United States shall
         not be construed to extend to any suit in law
3         or equity, commenced or prosecuted against
         one of the United States by Citizens of
4         another State, or by Citizens or Subjects of
         any Foreign State.

5    Claims under 42 U.S.C. § 1983 are limited by the scope of the

6    Eleventh Amendment.  *Doe v. Lawrence Livermore Nat. Laboratory*,

7    131 F.3d 836, 839 (9th Cir.1997).  "States or governmental

8    agencies that are considered 'arms of the State' for Eleventh

9    Amendment purposes' are not 'persons' under Section 1983.  *Will*

10   *v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

11       Plaintiffs argue that the Eleventh Amendment no longer

12   applies to this action because of the inclusion of the DOT as a

13   defendant in this action.  As authority, Plaintiffs cite *Sutton*

14   *v. Utah State School for Deaf and Blind*, 173 F.3d 1226 (10th

15   Cir.1999) as holding:

16        '[A] contract between a state agency and the
         federal government that explicitly requires
17        defendant to perform certain obligations
         imposed by federal regulations including
18        certain functions in bankruptcy court
         constitutes a waiver of the 11th Amendment.
19

20   Plaintiffs further state that "[t]his holding was followed by

21   Judge Wanger in his order granting dismissal in this action and

22   allowing Plaintiffs to file an amended complaint and thereby keep

23   Cal-Trans joined as a party herein.

24       Plaintiffs do not provide a page reference for this holding

25   in *Sutton* and the Court cannot locate it in the opinion.  At

26   issue in *Sutton* was whether the State had waived the Eleventh

7

Amendment immunity by removing the action to federal court, litigating the action on the merits, and raising the Eleventh Amendment for the first time on appeal.  173 F.3d at 1233-1236.

Plaintiffs' assertion that the court followed the holding in *Sutton* in allowing them to amend to include the DOT is false. *Sutton* was not previously cited to the court.  Further, the Order dismissing Plaintiffs' Complaint with leave to amend specifically stated:

> In dismissing the Complaint with leave to amend, no opinion is expressed whether the Amended Complaint will state a claim upon which relief can be granted or whether other immunities or affirmative defenses will bar this action or the relief sought.

The only Ninth Circuit case remotely on point is *Clallam County v. Department of Transportation of State of Washington*, 849 F.2d 424 (9th Cir. 1988), *cert. denied*, 488 U.S. 1008 (1989). Noting that Eleventh Amendment immunity may be waived if Congress expresses its intent to abrogate states' immunity pursuant to section 5 of the Fourteenth Amendment or a federal act manifests a clear intent to condition a state's receipt of federal benefits on the state's waiver of its immunity, *id.* at 427, the Ninth Circuit ruled that the Federal-Aid Highway Act, 23 U.S.C. §§ 101 *et seq.*, did not constitute such a waiver.  *Id.*  In the absence of persuasive apposite authority, Plaintiffs' opposition to this aspect of the motion to dismiss is without merit.

Defendants argue that Caltrans employees Pinne and Hutchison are also entitled to dismissal based on the Eleventh Amendment.

8

Defendants request the Court take judicial notice of California statutory procedures set forth in California Code of Civil Procedure §§ 1245.210 *et seq.* governing legal responsibility for adopting highway projects in California.  Defendants assert that these provisions place legal responsibility for adopting highway projects on the California Transportation Commission (CTC).  *See* CCP § 1245.210(g).  The CTC must review the project and may not commence an eminent domain proceeding until it has adopted a resolution of necessity.  CCP § 1245.220.  The resolution of necessity must contain, *inter alia*, a declaration that the CTC has found and determined that the "proposed project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury."  CCP § 1245.230(c)(2).  The resolution of necessity may be adopted only after the CTC has given notice and an opportunity to be heard to each person whose property is to be acquired by eminent domain and whose name and address appears on the last qualified equalized county assessment roll.  CCP § 1245.235(a).  No individual has been or could be granted authority for adopting public highway projects.

Defendants argue that Exhibit 1 to the FAC impliedly admits that the highway project was heard by the CTC at a public hearing and that at least one of the plaintiffs received notice of the hearing.  Defendants contend that the FAC contains no allegations that the CTC hearing did not occur or that they did not receive notice or were denied a reasonable opportunity to be heard.

Defendants assert that the FAC admits that two eminent domain suits to acquire Plaintiffs' property are proceeding in state court.  Both suits required project review by the CTC and notice to Plaintiffs with reasonable opportunity to be heard before those eminent domain suits were filed.  Defendants argue these facts directly contradict the allegations that Defendants Pinne and Hutchison acted "upon personal whims" and without a hearing are contradicted.

Defendants argue that the inclusion of the individuals, Pinne and Hutchison, as defendants is "simply an attempt to plead around the State of California's 11th Amendment affirmative defense by seeking federal jurisdiction through the employees of the State of California [and t]he substance of plaintiffs' suit continues to be directed at the State of California.  Defendants cite *Natural Resources Defense Council v. Cal. DOT*, 96 F.3d 420, 421-422 (9th Cir.1996):

> State immunity extends to ... state officers, who act on behalf of the state can therefore assert the state's sovereign immunity ... In general, federal court jurisdiction will not be found against a state official when the state is the real party in interest.

Plaintiffs admit in their opposition that they participated in a CTC meeting in Sacramento but assert that "the CTC did not, nor did Cal-Trans in prior CCP procedures, determine whether or not all the property sought to be acquired was necessary to the project."  Plaintiffs submit that Caltrans did not meet all of the requirements of CCP § 1240.030, which provides:

10

    The power of eminent domain may be exercised
to acquire property for a proposed project
only if all of the following are established:

    (a) The public interest and necessity require
the project.

    (b) The project is planned or located in a
manner that will be most compatible with the
greatest public good and the least private
injury.

    (c) The property sought to be acquired is
necessary for the project.

Plaintiffs contend that Caltrans never established that *all* the

property sought to be acquired is necessary for the project and

that Caltrans cannot meet that requirement.  Plaintiffs argue:

    Pinne and Hutchison modified the location of
the areas to be acquired for the Cal-Trans
Project after the earlier noticed public
hearings but without the holding of the
required additional hearings, a violation of
procedural due process, and, as a result it
was not determined that all the property
sought was necessary for the project.

  Plaintiffs argue that the Eleventh Amendment does not bar

this action against Defendants Pinne and Hutchison, relying on *Ex*

*Parte Young,* 209 U.S. 129 (1908).

  *Ex Parte Young* held that the Eleventh Amendment does not bar

suit against a state official acting in violation of federal law:

    [I]ndividuals who, as officers of the State,
are clothed with some duty in regard to the
enforcement of the laws of the State, and who
threaten and are about to commence
proceedings, either of a civil or criminal
nature, to enforce against parties affected
an unconstitutional act, violating the
Federal Constitution, may be enjoined by a
Federal Court of equity from such action.

209 U.S. at 155-156.  However, the Supreme Court cautioned:

11

> In making an officer of the State a party
> defendant in a suit to enjoin the enforcement
> of an act alleged to be unconstitutional, it
> is plain that such officer must have some
> connection with the enforcement of the act,
> or else it is merely making him a party as a
> representative of the State, and thereby
> attempting to make the State a party.

209 U.S. at 157.  The *Ex Parte Young* exception applies only to
ongoing and continuous violations of federal law.  *Papasan v.
Allain*, 478 U.S. 265, 277-278 (1986); *Green v. Mansour*, 474 U.S.
64, 68 (1985).  Furthermore, "[a]s *Ex Parte Young* explains, the
officers of the state must be cloaked with a duty to enforce the
laws of the state and must threaten or be about to enforce and
unconstitutional act."  *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th
Cir.1989).

Relying on these principles, Plaintiffs contend that
Defendants Pinne and Hutchison are subject to prospective
injunctive relief should Caltrans be ordered to hold public
hearings on highway access.  The FAC prays for damages against
these individual defendants.  Plaintiffs cannot seek monetary
damages against state officials in their official capacity and
may only seek such damages against state officials in their
personal capacity.  *Hydrick v. Hunter*, 466 F.3d 676, 688 (9th
Cir.2006).  Here, the FAC does not specify the capacity in which
the individual defendants are sued, although, given Plaintiffs'
arguments that the Eleventh Amendment does not preclude this suit
against Caltrans, impliedly the two individuals are sued in their
official capacity.  Under that circumstance, any claim for

1  damages against the individual defendants is barred by the

2  Eleventh Amendment.

3       The motion to dismiss the claims against the individuals is

4  GRANTED WITHOUT LEAVE TO AMEND.

5       B.  <u>Failure to State a Claim Upon Which Relief Can Be</u>

6  <u>Granted</u>.

7       Defendants argue that Plaintiffs' claim for denial of due

8  process of law because Pinne and Hutchison "worked together to

9  change the new Highway 4 access to suit their personal changes to

10 the highway design", that Plaintiffs were promised access to

11 their property in June 2000, and that the highway design was

12 changed without hearings based on personal whims must be

13 dismissed for failure to state a claim upon which relief can be

14 granted.

15      A motion to dismiss under Rule 12(b)(6) tests the

16 sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729,

17 732 (9th Cir.2001).  Dismissal of a claim under Rule 12(b)(6) is

18 appropriate only where "it appears beyond doubt that the

19 plaintiff can prove no set of facts in support of his claim which

20 would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-

21 46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the

22 complaint lacks a cognizable legal theory or where the complaint

23 presents a cognizable legal theory yet fails to plead essential

24 facts under that theory. *Robertson v. Dean Witter Reynolds,*

25 *Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to

26 dismiss under Rule 12(b)(6), the court must assume the truth of

13

all factual allegations and must construe all inferences from
them in the light most favorable to the nonmoving party.
*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However,
legal conclusions need not be taken as true merely because they
are cast in the form of factual allegations.  *Ileto v. Glock,
Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  Immunities and other
affirmative defenses may be upheld on a motion to dismiss only
when they are established on the face of the complaint.  *See
Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v.
Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling
on a motion to dismiss, the court may consider the facts alleged
in the complaint, documents attached to the complaint, documents
relied upon but not attached to the complaint when authenticity
is not contested, and matters of which the court takes judicial
notice.  *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th
Cir.1988).

In arguing that Plaintiffs' alleged due process violations
do not state a claim, Defendants rely on the statutory scheme and
arguments discussed above.  Plaintiffs cannot assert a claim
based on factually implausible and legally impossible
allegations.  No individual or group of individuals has the power
to approve a public highway adoption.

The motion to dismiss this claim is GRANTED WITHOUT LEAVE TO
AMEND.

C.  <u>Claim for Violation of Fifth Amendment Not Ripe</u>.

Defendants move to dismiss the allegations in paragraph 9

14

and the Third Claim for Relief on the ground that this claim "is
essentially a takings claim made under the 5th Amendment's Just
Compensation Clause".

Under *Williamson County Regional Planning Commission v.
Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), a takings
claim against a public entity is not ripe if a property owner has
an adequate remedy under state law for obtaining just
compensation and the property owner has not availed himself of
that process.  Until the property owner has been denied just
compensation, no constitutional violation occurs.  This is true
with respect to a claim of inverse condemnation.  *See*, e.g.,
*Ventura Mobilehome Communities Owners Ass'n v. City of San
Buenaventura,* 371 F.3d 1046 (9th Cir.2004).

Plaintiffs respond that Caltrans' eminent domain actions
filed against them in state court are premature and without
jurisdiction because, prior to commencing the eminent domain
actions, Caltrans did not satisfy the conditions precedent for
such actions in the California Code of Civil Procedure, did not
satisfy procedural due process, and did not conduct a *Kelo*
economic property use evaluation.  In addition, Plaintiffs argue
that there is no request in the FAC for compensation:
"Plaintiffs' Complaint is for a <u>Kelo</u> application of the public
use claims of the Fifth Amendment."[2]  *See discussion infra.*

_____

[2]Plaintiffs are advised that full citations to any cases cited
by them are required.  Merely referencing a case name does not
assist the Court in preparing for the hearing and in resolving that
matter before it.

1   Defendants further argue that this claim fails because
2   Plaintiffs have no standing to assert a claim on behalf of a City
3   or County for potential lost tax revenues of a hypothetical
4   development.  Defendants contend that the proper forum to assert
5   this claim is in the state court eminent domain actions.

6   Plaintiffs respond that the "City of Angels joined with
7   Plaintiffs to change the zoning of their 13.8 acres in northern
8   Angels Camp so that a new automobile dealership(s) could be built
9   keeping the Forty-Niner dealership within the City to continue
10  its seventy (70) years of sales tax revenue support."  Plaintiff
11  assert that the City of Angels acted in a manner similar to the
12  City of New London in *Kelo v. City of New London, Conn.*, 545 U.S.
13  469 (2005):

14          The City of Angels defined an area of the
            City for automobile dealership development
15          just as the City of New London did to
            increase local tax revenues and create new
16          jobs.

17          Since the City of Angels went so far as to
            join with Plaintiffs by adopting a zoning
18          ordinance, the Plaintiffs/City of Angels
            relationship would be similar to the
19          development corporation and the City of New
            London.

20
21  In *Kelo v. City of New London, Conn.*, New London approved a
22  development plan that was projected to create in excess of 1,000
23  jobs, to increase tax and other revenues, to revitalize the city.
24  In assembling the land needed for the project, the city's
25  development agent purchased property from willing sellers and
26  proposed to use the power of eminent domain to acquire the

16

remainder of the property from unwilling owners in exchange for just compensation.  The question presented to the Supreme Court was whether the city's proposed disposition of this property qualified as a "public use" within the meaning of the Takings Clause of the Fifth Amendment.

Plaintiffs' reliance on *Kelo* is misplaced - the Supreme Court's opinion has no relevance to Plaintiffs' claims in this action and does not constitute authority that Plaintiffs have standing in this Court to claim alleged lost tax revenues based on a hypothetical lost development opportunity.[3]  Further, Plaintiffs assertion that their "Complaint is for a *Kelo* application of the public use claims of the Fifth Amendment", simply does not make sense.

Plaintiffs have no claim in federal court for a taking of real property by the state.  They have no standing to assert a claim for the government's lost tax revenue.

D.  **Abstention**.

In the reply brief, Defendants argue that "Plaintiffs have adequate remedies in the state-court proceedings but they have not exhausted those remedies."  Defendants cite *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and *Younger v. Harris*, 401 U.S. 37 (1971).

In *Colorado River Water Conservation Dist.*, the Supreme

---

[3]Further, there are no allegations in the FAC that the City of Angels changed the zoning as asserted by Plaintiffs or that the City of Angels joined with Plaintiffs in doing so.

17

Court held that, under certain circumstances, the federal court may stay its proceedings in deference to pending state proceedings.  This doctrine "rest[s] on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. at 817.  In *Colorado River*, the Supreme Court examined four factors to determine whether staying proceedings was appropriate: (1) whether either court has assumed jurisdiction over a <u>res</u>; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction.  424 U.S. at 818.  In *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), the Supreme Court articulated two more considerations: (5) whether state or federal law controls and (6) whether the state proceeding is adequate to protect the parties' rights.  *See* 460 U.S. at 25-26; *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989).  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'"  *American Int'l Underwriters, (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988)(quoting *Moses Cone*, 460 U.S. at 16).  As explained in *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032-1033 (9th Cir.2005):

> In *Colorado River*, the Supreme Court was concerned with the problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts ... In such cases, the Court recognized there may

be circumstances in which traditional
abstention principles do not apply, yet
considerations of '"wise judicial
administration, giving regard to conservation
of judicial resources and comprehensive
disposition of litigation,"' nonetheless
justify a decision to stay or dismiss federal
proceedings pending resolution of concurrent
state court proceedings ... Such
circumstances are, however, exceedingly rare.
As we have previously observed, the *Colorado
River* doctrine is a 'narrow exception to "the
virtually unflagging obligation of the
federal courts to exercise the jurisdiction
given them."' ....

We have consequently held that 'the exercise
of a substantial doubt as to whether the
state proceedings will resolve the federal
action precludes the granting of a [*Colorado
River*] stay.' ... '[E]xact parallelism'
between the state and federal proceedings is
not required ...; however, any substantial
doubt is sufficient to preclude a stay:

> When a district court decides to
> dismiss or stay under *Colorado
> River*, it presumably concludes that
> the parallel state-court litigation
> will be an adequate vehicle for the
> complete and prompt resolution of
> the issues between the parties. *If
> there is any substantial doubt as
> to this*, it would be a serious
> abuse of discretion to grant the
> stay or dismissal at all ....

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court
announced a doctrine that federal courts should not enjoin
pending state criminal prosecutions absent a showing of the
state's bad faith or harassment, or a showing that the statute is
"'flagrantly and patently violative of express constitutional
prohibitions.'" Id. at 53-54. *Younger* premises its holding on
principles of equity and comity. A basic doctrine of equity

jurisdiction is that courts of equity "should not act to restrain a criminal prosecution[] when the moving party has an adequate remedy at law and will not suffer irreparable injury." **Id**. at 43-44.  As a matter of comity, federal courts should maintain respect for state functions and should not unduly interfere with the state's good faith efforts to enforce its own laws in its own courts.  **Id**.  *Younger* abstention is proper where (1) there are ongoing state judicial proceedings, (2) that implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions.  *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982).

Here, there is no doubt that there are on-going state judicial proceedings - the FAC specifically refers to the eminent domain cases and seeks an order enjoining them.  As to whether this action will implicate important state interests, this Court held in *Central Valley Water Agency v. United States*, 327 F.Supp.2d 1180, 1215 (E.D.Cal.2004), *aff'd,* 452 F.3d 1021 (9th Cir.2006):

> *Younger* abstention is appropriate only if the federal action would affect important state interests that are '"vital to the operation of state government."' ... 'Although *Younger* itself involved a threatened injunction of a pending state criminal proceeding, the concerns for comity and federalism underlying *Younger* are "equally applicable to certain other pending state proceedings" in which important state interests are involved.' ... 'Abstention in such cases is appropriate, however, only when "the State's interests in the proceeding are so important that exercise

20

1
2

                  of the federal judicial power would disregard
                  the comity between the States and the
                  National Government."' ....

3
4
5
6
7
8
9

Here, the state court eminent domain proceedings brought by Caltrans to obtain land for highway development clearly satisfy this requirement. *See M&A Gabaee v. Community Redevelopment Agency*, 419 F.3d 1036, 1039 n.2 (9th Cir.2005)("states clearly have an interest in the exercise of their own eminent domain power"). The matter of local land use regulation is an important state interest.

10
11
12
13

    Finally, Plaintiffs will have an adequate opportunity to litigate their claims of denial of procedural due process and breach of promise in the eminent domain proceedings. *See* M&A *Gabaee*, *supra*, 419 F.3d at 1039 n.2:

14
15
16
17
18
19

        M&A will have an opportunity to litigate its
        constitutional claims in state court.
        California law permits M&A to challenge the
        taking based not only on California state
        standards, but also on '[a]ny other ground
        provided by law.' Cal.Civ.P.Code §
        1250.360(h). Since M&A has pointed to no
        procedural bar to its ability to raise its
        constitutional claims in California court,
        this prong of the test is also satisfied.

20
21
22
23
24
25

    Although Plaintiffs claim damages against the individual Defendants, those claims are not ripe or legally sufficient. *See discussion supra*. Consequently, the general rule that *Younger* abstention requires a stay, rather than dismissal, of an action for damages, *see Gilbertson v Albright*, 381 F.3d 965, 968-969 (9th Cir.2004) is not applicable.

**CONCLUSION**

26

21

1      **Plaintiffs' have adequate remedies in the state court.  Land**
2  **use matters are inherently of local concern.  No immediately**
3  **protectible interest has been identified requiring exercise of**
4  **federal jurisdiction.  Even if a federal claim could be stated,**
5  **abstention is appropriate to enable the presentation of any such**
6  **issues in the already pending state court eminent domain lawsuits**
7  **and based on other state remedies available to Plaintiffs.**

8      **The motion dismiss is GRANTED WITHOUT LEAVE TO AMEND.**
9  **Defendants shall submit a form of judgment within five (5) days**
10 **following service by the clerk of this memorandum decision.**

11     IT IS SO ORDERED.

12 **Dated:   August 14, 2007**                    /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE

22